## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

**David A. Horn**
770 C. Street S.E.
Apt. 210
Washington, D.C. 20003
240-688-1994

      **Plaintiff**

       **v.**

Case: 1:18-cv-00550   **JURY DEMAND**
Assigned To : Sullivan, Emmet G.
Assign. Date : 3/9/2018
Description: Pro Se Gen. Civ. **(F-DECK)**

**DP Management, LLC**
701 Lamont Street N.W.
Suite 11
Washington, D.C. 20010

**North Parcel Residential Intergenerational LLC**
3307 M. Street N.W.
# 400
Washington,D.C. 20007

**District Department of Transportation**
**Office of the Attorney General**
441 4th Street N.W,
Suite 600 South
Washington, D.C. 20001

      **Defendants**

## COMPLAINT

Plaintiff presents material facts that are relevant to the Plaintiff's Claim before this Court.

Plaintiff's Case is not frivolous, and in good faith, asking this Court to rule on the merits in this Case

to protect and restore Plaintiff's Rights, from unlawful actions taken against Plaintiff by Defendants.

Plaintiff was Discriminated against, by Defendants, Plaintiff's Civil Rights were violated,

RECEIVED

MAR - 9 2018

Clerk, U.S. District and
Bankruptcy Courts

endured discriminatory effects, denied ADA reasonable accommodations, denied equal participation in

local DC Governments Program access and Services.  Defendants misrepresentations, with the use

of collusion, which seems to legal on its face, caused Plaintiff pain and suffering, and emotional

distress.  Placed barriers that bar Plaintiff's legal rights and access to ADA, reserve residential parking,

possible monetary loss, regulatory penalty and forfeiture of Plaintiff's Property.  Evident, relating to

Defendants keeping Plaintiff, of the North Building, deceptively uninformed, and void administratively,

on Parking and other important Issues.  The Defendants showed neglect and callousness towards

Plaintiff, this done by Design.  Where Plaintiff seeks Justice.

### Introduction

1.  Before Plaintiff signed a Lease Agreement on October 31, 2017, with DP

Management LLC, **See** Lease Agreement Pl. ex. # 1 Sec. A.  Plaintiff, and his Veteran Affairs

Representative met with a Mr. Obi, an employee for DP Management LLC, on a few occasions at

770 C Street Apartments in S.E. Washington, D.C., and once at another Job location in North West

Washington D.C.  On one such occasion Plaintiff and VA Rep., met with Mr. Obi to make application

for an Apartment and left a 35 dollar deposit for a credit check and administrative review of the

application.  The Plaintiff was told by Mr. Obi that their were (four) One Bedroom Apartments

available and Plaintiff has an opportunity to choose from any of the four Apartments.  Plaintiff

and his VA Representative were shown the first and second floor Apartments, but never allowed to

see the other (two) available Apartments.  Mr. Obi and (three) other DP Management LLC,

Employee's, also acknowledged that (four) apartments were also available, but they all failed to show

Plaintiff the other Apartments, even after multiple requests.  Plaintiff felt he was being steered to

take the second floor apartment, shown to Plaintiff and would loose any chance of viewing or renting

the other "two" available Apartments.  Plaintiff's photo taken with a DP Management LLC Employee showing the second floor Apartment, and who did refuse to show the two other available Apartments, **See** Pl. ex. # 2 and # 3 sec. A, dated October 19, 2017.  This without explanation, this was wrong.

2.   These scenario's happen because, earlier I was told by Mr. Obi that my Rental Application was rejected because of a bad Credit Report, this was a surprise to my VA Representative, Plaintiff, and didn't sound right because two banks had extended credit to Plaintiff.  Later I was told that there was a mistake on my application, and not excepted, and that the financial portion was lost, and that I needed to re-submit that portion, after getting 6 more months of financial information, at time and cost spent. I was told that the lost paperwork was found.  The actions of DP Management LLC, where unprofessional and being in the VA's VASH-HUD Voucher Program in concert with D.C. Housing Authorities, application processing, where Plaintiff had to be issued a second Voucher which was processed on an emergent basis.  Mr. Obi's in-action contributed greatly to the Plaintiff's problems. It was told to me that, Mr. Obi was let go from his Employment, with DP Management LLC.

3.   Earlier, Mr. Obi told Plaintiff that Parking for the North Building would be made available, every time he was asked by Plaintiff, but without specifics.  He gave no time frame or fee figures.  Plaintiff felt it was Free, even after seeing the Lease Agreement.  Other Seniors who inquired about parking, months before Plaintiff, also got no answers from DP Management LLC, Staff.  Even as Plaintiff's Lease Agreement gives inference, that Residents could be subject to penalties for parking and towing.  **See.** Least Agreement Pl. ex. # 1. at 18, (f), sec. A.  Miscellaneous Provisions.  The Plaintiff's VA Representative, nor the Plaintiff could get clarification, or a response from Defendant DP Management LLC, or **("Lessor"),** North Parcel Residential Intergenerational LLC, regarding any parking arrangements.  Note: **Residential** left out of Name on Lease Agreement.

4.  The Plaintiff's time line shows just how egregious, and negligent the inaction and non-response from the Defendants.  DP Management LLC, and North Parcel Residential Intergenerational LLC, who continues to have the Plaintiff suffer in pain, and no attempt to resolve any emergent issues. On November 2nd, 2017, Plaintiff went to DC DMV, for a duplicate drivers license and a change of address, also Residential Permit Parking with Ward 6 Sticker.  The Plaintiff was denied the Ward 6 Sticker, told my address was in a Commercial Zone, got Duplicate Drivers License.  **See.** Pl. ex. # 4, sec. B.  Plaintiff was put immediately in a dire situation medically, over weeks, attempting to get an understanding from Defendants, and to solve the problem.  The Plaintiff reached out to his Veterans Representative, who alerted Plaintiff's Doctor to prepare documentation for a Disability Parking Placard.  **See.** Pl. ex. # 5, # 6, # 7, sec. B.  Plaintiff's Veterans Affairs Rep., who's had to deal with an unresponsive Staff at DP Management LLC, has sought a response from the Owner also.  **See.** Pl.. ex. # 8, sec. B.  Veterans Representative is without knowledge of any parking arrangements, but is inquiring and still no response from Defendants, to Veteran Representatives Letter.

Plaintiff waited a couple of weeks, but still no information regarding Parking, from Defendants. Plaintiff sent a Certified, Notarized Letter and accompanying Documents to the Defendants, with some information found by Plaintiff that should have gotten a response.  Defendants inaction made Plaintiff feel that something was wrong and being concealed, to prevent the Plaintiff's from getting reasonable parking accommodations, under the Americans with Disabilities Act.  **See.** Pl. ex. # 9, sec. B, inside also see page # 12 near top, at C, # 1 **North Building,** Plaintiff's lives in the North building.  Also see bottom of page.  **Note:** " No on-site parking will be provided in or under this building, but will be provided in the **South Building**.  **Note:** The Defendants knew or should have known of this information but failed to respond to Plaintiff's Veterans Affairs Representative, or to the Plaintiff, and

still allows for the Plaintiff to suffer.  **See:** Detailed corroborate medical documentation from Veterans Affairs Medical Center Doctors and VA Rep., Larry Kirsch.  **See:** Pl. ex. # 10, # 11, # 12, # 13, # 14, # 15, sec. C.  **Note:** Plaintiff discovered other information, Defendants should have revealed to Plaintiff administratively, regarding access to Parking Spaces, North Building Residents would be allowed, at some point to park in the South Building, Defendants concealed, **See.** Pl. ex.# 50, pg 60 (A.) # 4, sec. J. While going through a lot, Plaintiff had boil water because he had no "Hot Water" for fourteen Day's, starting November 14, 2017 up past the Thanksgiving Holiday.  Plaintiff had to run out to move his Vehicle under difficult situations, sometimes parking blocks away.  This, for weeks after moving in to Plaintiff's Apartment.  For something as minor, as changing the heating elements in the "Water Tank". DP Management LLC, erred on Plaintiff's Housing documentation, sending it to DC Housing without correction that caused Plaintiff to have back payments of $52.00 from November 1, to March  2017. **See, Pl, ex.**  # 16A, # 16 B, # 17 Sec. D.

5.  DP Management LLC Employee Kay, who was new to the North Building, after some time told Plaintiff the price for parking would be around $180.00 Dollars.  Where she got the information from at that time, she did not share it with Plaintiff.  Plaintiff felt that price was too high, and Subsidized Rents or low income Residents, were seeking free Parking.  DP Management's Employee's had information but wasn't sharing it.  Plaintiff had no knowledge about paid parking arrangements in the South building.  It was after recognizing advertizing, Apartments for lease. that Plaintiff went on-Line and saw the price and the number of **Assigned Parking Spaces**.  See. Pl. ex # 24 **sec**. D.  DP Management LLC, it's Staff, and Defendant North Parcel Residential Intergenerational, LLC, knew a Parking Management Component would be in the South Building, and concealed the

information from Plaintiff and Plaintiff's Veteran's Affairs Representative, who mailed an inquiry to Defendants, but did not get a response back, our requests were futile. **Refer to Pl. ex.** # 8, # 9. sec. B. Plaintiff in pain, practically begged Defendants to resolve our issues Amicably without litigation. **See**. **Pl. ex.** # 9, sec. B. Mailed to Defendants on January 3, 2018 regarding ADA reasonable parking accommodations.

6.   Since then, a flurry of signage went up and on Streets, around the North and South Buildings, over a few weeks and Days from Plaintiff's mailing.  See, Pl. ex. # 25 sec. E, this sign has been out in front of Plaintiff's building through the Winter at times partially blocking the tight sidewalk space, and  promoting Trader Joes across the street, we all love the businesses, but to be so insensitive putting it out front of a Seniors Building, also near curb cuts are, its a bad choice on a tight walkway. Also See Pl. ex. # 26, # 27, # 28 sec. E.  Plaintiff identified on record for DP Management LLC, that he was disabled, Plaintiff also states in the Pleadings that he was only allowed to see two, of the four available Apartments, and felt he was been steered to choose one of the two.  Plaintiff explained the challenges he and his VA Representative faced, with Defendants and other application processes.  In documentation Plaintiff found, there were statements made that Grab Bars would be on all Seniors Bathtub, and raised Toilets, this for ADA compliance.  Plaintiff and his VA Representative had set out for these and other amenities such as an elevator and parking, refer to Pl, ex. # 10 sec. C.

7.   Defendants, DP Management LLC, Agent and North Parcel Residential Intergenerational LLC, Owner, sought to pass Plaintiff's Apartment off as something other than a Handicap Apartment. They initially said I had poor credit, which was false, then they said the Plaintiff's Application was lost and then they couldn't find Plaintiff's Bank Statements.  The Apartment was not rented out for close to a Year, which Plaintiff was told.

Apartment was very dusty, and  Defendants actions were deceptive, they wanted to keep the

Apartment as aesthetically pleasing as possible for someone made desperate, like the Plaintiff.

Having went through the application debacle, having DC and Federal Governments working extra hard

to get things right on Plaintiff's behalf.  Plaintiff, didn't get an ADA Approved Amenities Apartment,

with a Grab Bar, nor a raised Toilet.  This wasn't an oversight, it was deliberately not installed.

8.  **Note:** Defendants of the North Building wish to get around ADA, first with the Parking, then

not putting in a Grab Bar or a raised Toilet in the Plaintiff Bathroom.  They provided the Seniors in the

North Building with Grab bars and raised Toilets, which is a good thing, while leaving Plaintiff's

"Handicap Apartment" without the same amenities, is Discriminatory.   All I got was two "Peep Holes"

the lower one would come in handy, if I became wheelchair bound.  They felt that building a new

Mixed Building, with Seniors should get them by with only amenities for Seniors, under ADA.

Avoiding putting a Grab Bar and a raised Toilet in a  Handicap Bathroom, which the Plaintiff needs.

They would want to call it a modification, or making changes after the fact, where Plaintiff would have

to pay for cost of the repairs, this for making the request of the Landlord.  Where this Court should not

allow.  Defendants knew it was going to be a Handicap Unit from the outset, this from the Architects

Plans, but still denied Plaintiff those specific ADA amenities, where they would be helpful to Plaintiff.

**See**. Pl. ex. # 18, # 19, # 20, # 21 sec. F.

9.  Plaintiff called the DC Department of Transportation (DDOT), where the initial Clerk

gave Plaintiff incorrect information, saying Plaintiff should have been able to get the Residential Permit

Parking, (RPP) with ward 6 Sticker.  Plaintiff found that Clerk couldn't find Plaintiff's Address in her

Computer.  Plaintiff went down to DDOT, and found that Clerk could not find an Address in the

Computer, nor Owner's information because the computer was not up to date. Other Residents

got similar information and paperwork from DDOT.  Plaintiff found out later that something in the

paperwork, didn't offer corresponding information.  **See. Pl. ex.** # 29, **#** 30, **#** 31, # 32,

# 33, # 34, sec. G.  Plaintiff reviewed paperwork from Clerk, and instructions on what possibly

to do.  Plaintiff reviewed Documents, (1.) Establishment and Approval of Residential Permit Parking

Areas, (2.) Issuance of Residential Parking Permits, (3.) Impoundment, of Vehicles for Violations.

**See. Pl. ex.** # 35, # 36, # 37 # 38 in Sec, G.  Plaintiff not being part of a (1.) (residential block) Plaintiff

can not qualify under the Residential Permit Parking (RPP), Program, that would be issued a Ward 6

Sticker to be affixed on Plaintiff' Vehicle, Review Pl. ex. # 33, 34, sec G.  If Plaintiff would seek to

file, "Application for Reserved Residential Parking Space for Disabled Resident", Review: Pl. ex.

# 29, at, (1.), (4.) (5), sec. G

10.  Where Plaintiff would be Eligible, but barred by Defendants and ANC 6b, for Reserve

Parking.  The Street is **in front of Plaintiff's** Residential Building, C. Street, and made a Private Street,

with drive through access and parking, without any regulatory parking signs for hours allowed, by D.C.

DDOT.  That stated no parking on Saturday and Sunday, where all other days allowed.  In reviewing

Parking Regulations Plaintiff's allowed only 4 hours to park in the Ward, where Plaintiff has Garage

Parking directly in front of Plaintiff's Building also barred from parking inside, and has to search

exhaustively for parking, most times two or more blocks away.  **See. Pl. ex.** # 23, # 39, # 40, # 41 # 42

in sec. **H.**  also **Review: Pl. ex.** # 34, **sec. G. At** check marks.

11.  Plaintiff went to a few DC Government Agencies, seeking information, because things were

not adding up to resolve the problems.  Plaintiff went to D.C. Surveyors Office trying to find out who

owned the Building at 770 C. Street S.E. Washington 20003.  I was given two drawings, and both did

not show the Plaintiff's Building on the drawings.  **See.** Pl. ex. # 43a, # 43b, # 44a, # 44b, sec. I.

Plaintiff was instructed to try Department of Regulatory Affairs, which Plaintiff had already tried, and

D.C. Tax Office, where Plaintiff paid for a set of Documents, **See. Pl. ex. #** 45, # 46, **sec. I**. Told to

go back to Surveyors Office, to see if they could help.  Owners name nor Business name were

found, in Department of regulatory affairs search by Plaintiff.  Plaintiff returned to Surveyors Office

with the two documents, it was found that the lot and square numbers had been changed, that is why

the current drawing could not be found **See. Pl. ex. #** 47, # 47a., Sec. I.  **Note:** the Name of the

Authorized Representative in Pl. ex. # 45, # 46, both pages. #2, is also reflected in the last (2) pages of

Pl. ex. # 9. sec B.  Plaintiff's Least Agreement on page one (1), the first paragraph the word

**Residential** is omitted from the official name, of the ("Lessor"), **Pl. ex. #** 1. 1st pg, sec. A. but is

prominently shown in **Pl. ex. #** 45, this is not an oversight, it is misrepresentation.

Plaintiff and Plaintiff's VA Representative forwarded correspondence to Defendants but received no

answer back, this because of defendants malice intent towards Plaintiff, this to show the Court.

**review** Pl, ex.# 8, # 9, sec. B.  **See. Current Drawing found from Surveyors Office, showing**

**Plaintiff's Building**. **See. Pl. ex. #** 47, # 47a. Sec. I.  **Also see.** Mixed-Use Project diagrams, **Pl. ex.**

# 48, # 49, sec. I

12.  Plaintiff saw where Defendants, were disregarding Parking Access, or information for

Plaintiff a Resident of North Building, **770 C. St. Apartments.**  Defendants showed no consideration

towards Plaintiff's Handicap Status, in any aspect, Nor Residents of 770 C. Street Apartments, North

Building, who weren't told by the Defendants, Advisory Neighborhood Commission, (ANC) 6b.  That

Plaintiff would be restricted from Residential Permit Parking (RPP) Program, and not alerted to an

alternative parking solution for Plaintiff.

The ANC 6b identified that Residents in the South Building, **The Residents at Eastern** Market **Apartments**, would lose the their Residential Permit Parking and Visitors Permit Parking, where Applicant indicated its agreement. before the Zoning Commission.  **See. Pl. ex.** 50, pg. 11, (b). **also see.** Pg. 13, # 30, (b). sec. J.  Defendants at no time disseminated information of the RPP restrictions, to the Plaintiff or residential of the North Building.  This lack of information was used to keep residents uninformed about their parking situations, which  was the case for the Plaintiff.  Residents of the South building at least have an actual Parking Garage.  The Zoning Commission in its Decision, saw through Defendants attempts to keep Plaintiff, and Residents of the North Buildings from knowing they had access to parking entitlements in the South Building, and that rights should not be violated.

**See. pl. ex. 50,** pg. 59 # 16, **also pg.** 60, (A.) # 4, **sec. J.**   Plaintiff feels this lends credibility to statements in the pleading, that plaintiff's VA representative and Plaintiff could not get any clarification from Defendants regarding parking, and parking in the South Building **refer:** to Pl. ex. # 8, # 9 **sec.** B.  **Refer: to pl. ex. # 1 at 18 (f.)sec. A.  Defendants wish to conceal information.**

13. Defendants failed in **Comparison** to Plaintiff's Exhibit # 51, pg. 17, (h.) thru (j.) and pg 18 at D, # 3, **sec.** K.  Plaintiff's knew that taking parking spaces from the Community was expressly for Flee Market Group, Accommodations in the South Building's Garage, that Plaintiff excepts.  **See. pl. ex. 52, 52a, sec. K.** Defendants didn't do their due diligence to see where Plaintiff would be negatively impacted, focusing on profits and not considering Plaintiff, seeing the North Building as less deserving. Who places 50% Seniors in any environment without a working Intercom System, to receive Guests or Emergency Personnel, without a Building Camera System or Security, 5 Months for Plaintiff and much longer for other Residents.  The amenities for the South building's far out weigh anything considered for Plaintiff's, North Building.  Its not that the North Building isn't a nice Residential Space, but

**without a working Intercom System.  See. Pl. ex. 53. sec. L.**

### In Closing

14.  North Building, for Blocks are restricted to (two) hour parking from 7am until 8:30 pm Monday through Friday, without a Residential Permit Parking and a Zone (6) Sticker affixed to the vehicle.  Plaintiff's Handicap Placard allows 4 hours in the Ward to Park.  Plaintiff has to move his Vehicle, Plaintiff can no longer park in the Ward for the rest of the Day, where Plaintiff is a Resident, but without a Residential Permit Parking RPP.  As there is a Private Street, and a Parking Garage, right in front of Plaintiff's Resident.  **See. Pl. ex. # 41 in sec. H.**  It also has been established that a Parking Space should be allotted for sell or lease to Plaintiff.  **Refer: to Pl. ex. 50, pg. 60(A.) # 4., sec J.** Plaintiff hasn't seen any administrative reassurances or date certain from Defendants, that would lessen Plaintiff's Hardships, over the Months, trying to get reserve handicap parking in the South Parking Garage, or on the Private Street, by asking Defendants, who fails to offer Reasonable Parking Accommodations under Americans with Disabilities Act.  Plaintiff hasn't been able to enjoy his Apartment, or the Community, where Defendants have promoted everything other, and who makes Plaintiff feel there may an element, or the effect of discrimination towards Plaintiff's disability status, even as it common to accommodate the disable with reserve parking, even if you can't see ones disabilities.  **See. Pl. ex.  # 54,** and **# 55** in **sec. M.**

11.

15.  Plaintiff ask that the Court Order a Mandatory Injunction against Defendants, that allows Plaintiff to Park in a Handicap Parking Space, in the South Building's Garage, with a time requirement as all other Residents of the South Building, to Park.  To install a Grab Bar in Plaintiff's Shower, and to allow Civil Penalty against Defendants for any wrongful actions, against the Plaintiff.

If the Court sees a need to Act.  Jury Trial.

Sincerely Submitted

David A. Horn
770 C. St. S.E.
 Apt. # 210
Washington, D.C.
 20003

12.

## Certificate of Service

I David A. Horn, hereby declare that on the _____9_____ day of _March_ , 20 _18_

mailed a copy of the Summons and Complaint, certified mail return receipt requested, to Defendants.

DP Management LLC
701 Lamont St. N. W.
Suite 11
Washington, D.C. 20010

North Parcel Residential Intergenerational LLC
3307 M. Street N.W.
# 400
Washington, D.C. 20007

District Department of Transportation
Office of the Attorney General
441 4th Street N.W.
Suite 600 South
Washington, D.C. 20001

David A. Horn
770 C. St. S.E.
Apt. 210
Washington, D.C. 20003
240-688-1994
**Pro Se Plaintiff**